

FILED

Sep 28 2020, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| | |
|---|---|
| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
| M.A. | Curtis T. Hill, Jr. |
| Plainfield, Indiana | Attorney General of Indiana |
| | |
| | Frances Barrow |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| M.A., | September 28, 2020 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 20A-EX-160 |
| v. | Appeal from the Review Board of the Indiana Department of Workforce Development |
| Review Board of the Indiana Department of Workforce Development, | The Honorable Stephen F. Bier, Chairperson |
| *Appellee-Respondent.* | The Honorable Lawrence A. Dailey, Member |
| | Application No. 19-R-1275 |

**Najam, Judge.**

# Statement of the Case

M.A. appeals the decision of the Review Board of the Indiana Department of Workforce Development ("the Board") affirming the decision of the Administrative Law Judge ("ALJ") that M.A. had insufficient wage credits to meet the statutory requirements to establish a claim for unemployment benefits. M.A. presents a single issue for our review, namely, whether the Board erred when it determined that he was ineligible to receive unemployment benefits.

We affirm.

# Facts and Procedural History

On June 13, 2018, M.A., an employee of Coca-Cola Co., was injured on the job, and he lost that job on June 27. M.A. filed a claim for unemployment benefits, which was approved, and he received those benefits from July 19 through November 15. On November 15, M.A. underwent surgery related to the injury he had sustained on June 13. After the surgery, M.A. received workers' compensation benefits until he was rehired at Coca-Cola, with restrictions, on March 4, 2019.

On May 31, Coca-Cola terminated M.A.'s employment a second time. On September 13, M.A. filed a new claim for unemployment benefits. The Indiana Department of Workforce Development ("DWD") denied that claim on September 16. In particular, the DWD claims investigator determined that M.A. had insufficient wage credits during the applicable base period to support his claim under the relevant Indiana statutes. M.A. appealed that

determination to the ALJ, who affirmed the denial of benefits following a hearing. The ALJ found and concluded as follows:

> The claimant opened a claim for unemployment benefits on September 13, 2019. The base period for such claim ran from April 1, 2018[,] until March 31, 2019[,] which involved the 2nd, 3rd, and 4th quarters of 2018 as well as the 1st quarter of 2019. [Coca-Cola] reported wages during such period for the claimant. The claimant did not have wages from any other employer during such time period.
>
> For the 2nd quarter of 2018, the claimant had wages of $11,297.52. For the 3rd quarter of 2018, the claimant had wages of $1,281.37. No wages were reported for [the] 4th quarter of 2018. For the 1st quarter of 2019, wages of $3,414.40 were reported. The total reported wages for such quarters amounted to $15,993.39. The claimant was deemed to have insufficient wage credits during such base period because his total wages were not at least 1.5 times the amount of his highest quarter. The claimant believed that he actually received wages totaling $3,694.23 in the 1st quarter of 2019.
>
> The claimant sustained a workplace injury on or about June 13, 2018[,] which lead [sic] him to file a Workers' Compensation claim shortly thereafter. He was terminated on June 27, 2018[,] but [was] subsequently reinstated in March 2019. He was released to return to full duty without restrictions on or about May 22, 2019. The claimant received Workers' Compensation benefits for a period of time of less than 52 weeks. *The claimant desired to have his Workers' Compensation benefits counted as wages for unemployment insurance eligibility purposes.*
>
> The base period consisting of the first 4 of the last 5 completed calendar quarters before the claimant was last able to work due to his injury consisted of the 4 calendar quarters of 2017. He had

earnings of $5,805.78 in the first quarter of 2017 and no usable earnings in the remaining 3 quarters of 2017.

CONCLUSIONS OF LAW:

Indiana Code § 22-4-14-5 requires an individual to have a certain amount of wage credits during the base period to establish an unemployment claim. The base period is defined as "the first four (4) of the last five (5) completed calendar quarters immediately preceding the first day of an individual's benefit period[.]" Ind. Code § 22-4-2-12. *See also* Ind. Code § 22-4-2-13 (defining calendar quarter). The benefit period "means the fifty-two consecutive weeks period beginning with the first week as of which an insured worked first files an initial claim for determination of his insured status, and thereafter the fifty-two-consecutive-week period beginning with the first week as of which the individual next files an initial claim after the termination of [his] last preceding benefit period." Ind. Code § 22-4-2-21.

One of the earning requirements that must be met is that the total amount of wage credits in the base period be at least $4,200.00. *See* Ind. Code § 22-4-14-5(c)(2). Another requirement is that the wages in the last two quarters of the base period equal at least $2,500.00. *See* Ind. Code § 22-4-14-5(c)(2). The final requirement is that the total amount of wage credits in the base period must be equal to at least one and five-tenths (1.5) times the wages paid to the individual in the calendar quarter in which the individual's wages were highest. *See* Ind. Code § 22-4-14-5(c)(2). Each of the statutory requirements must be met and cannot be waived.

In this case, the claimant did not meet all of the earning requirements. The claimant earned $11,297.62 in the highest quarter of his base period. This amount multiplied by 1.5 equals $16,946.43 while his total wages were only $15,993.39. Even if the claimant received $3,694.23 in the 1st quarter of 2019 as he

asserted, the total wage credits for his base period would still only be $16,273.22 which is not at least 1.5 times his highest quarter earnings.

Ind. Code § 22-4-4-2(c)(1)(B) specifically excludes from the definition of wages any payments that are received under Worker's [C]ompensation or occupational disease compensation law. As such, the Workers' Compensation benefits which the claimant received may not be used to calculate the wage credits necessary to establish an unemployment insurance claim.

Ind. Code § 22-4-2-12.5 states:

"Notwithstanding section 12 of this chapter, for an individual who during the 'base period' as defined in that section has received worker's compensation benefits under IC 22-3-3 for a period of fifty-two (52) weeks or less, and as a result has not earned sufficient wage credits to meet the requirements of IC 22-4-14-5, 'base period' means the first four (4) of the last five (5) completed calendar quarters immediately preceding the last day that the individual was able to work, as a result of the individual's injury."

Claimant did receive worker's compensation for a period of less than fifty-two (52) weeks. The alternate base period established based on the last day that the claimant was able to work as a result of his injury (June 13, 2018) included the four calendar quarters of 2017. He had wages in the 1st quarter of his alternate base period that exceeded the $4,200 minimum total wage requirement. However, he had no usable wages in the remaining three quarters to enable him to meet the requirement of having at least $2,500.00 in the final two quarters or of having total wages at least 1.5 times the wages in the highest quarter.

In this case, the claimant did not meet all of the earning requirements. Therefore, the Administrative Law Judge

concludes that the claimant had insufficient wages to meet the requirements of Indiana Code § 22-4-14-5 to establish an unemployment claim and the monetary computation was correct.

DECISION:

The initial determination of the claims investigator is affirmed. The monetary determination dated September 16, 2019 is AFFIRMED. The claimant is monetarily ineligible for an unemployment claim.

Appellant's App. Vol. 2 at 31-33 (emphasis added). M.A. appealed that decision to the Board, which affirmed it. This appeal ensued.

# Discussion and Decision

### *Standard of Review*

Our Supreme Court has set out the applicable standard of review as follows:

The Indiana Unemployment Compensation Act [("the Act")] provides that any decision of the Review Board shall be conclusive and binding as to all questions of fact. Ind. Code § 22-4-17-12(a) ([2020]). When the decision of the Review Board is challenged, an appellate court makes a two-part inquiry into (1) "the sufficiency of the facts found to sustain the decision" and (2) "the sufficiency of the evidence to sustain the findings of fact." *Id.* § 22-4-17-12(f). This Court provided an extensive analysis of the standard of review for these cases in *McClain v. Review Board of Indiana Department of Workforce Development*, 693 N.E.2d 1314 (Ind. 1998). Simply stated, an appellate court reviews "(1) determinations of specific or 'basic' underlying facts; (2) conclusions or inferences from those facts, sometimes called 'ultimate facts,' and (3) conclusions of law." *Id.* at 1317.

The Review Board's "findings of basic facts are subject to a 'substantial evidence' standard of review." *Id.* We neither reweigh evidence nor judge the credibility of witnesses; rather, we consider only the evidence most favorable to the Review Board's findings. *Id.* We will reverse the decision only if there is no substantial evidence to support the Review Board's findings. *Id.*

*J.M. v. Rev. Bd. of the Ind. Dep't of Workforce Dev.*, 975 N.E.2d 1283, 1286 (Ind. 2012). Further,

[u]ltimate facts—typically mixed questions of fact and law—are reviewed to ensure the Board has drawn a reasonable inference in light of its findings on the basic, underlying facts. *Id.* at 1317-18. Where the matter lies within the particular expertise of the administrative agency, we afford the finding a greater level of deference. *Id.* at 1318. Where the matter does not lie within the particular expertise of the agency, however, "the reviewing court is more likely to exercise its own judgment." *Id.* Regardless, "the court examines the logic of the inference drawn and imposes any rules of law that may drive the result." *Id.* The Board's conclusion must be reversed "if the underlying facts are not supported by substantial evidence or the logic of the inference is faulty, even where the agency acts within its expertise, or if the agency proceeds under an incorrect view of the law." *Id.*

We are not bound by the Board's conclusions of law, though "[a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself." *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000).

*Chrysler Group, LLC v. Rev. Bd. of the Ind. Dep't of Workforce Dev.*, 960 N.E.2d 118, 122-23 (Ind. 2012).

## *Background*

As our Supreme Court has explained,

> [t]he [Act], Ind. Code art. 22-4, was enacted to "provide for payment of benefits to persons unemployed through no fault of their own." Ind. Code Ann. § 22-4-1-1 (West 2007). To be eligible for unemployment benefits, an individual must meet the requirements set forth in Ind. Code ch. 22-4-14-1 and must not be disqualified by any of the various exceptions provided in ch. 22-4-15-1.
>
> The eligibility requirements for unemployment benefits include that an individual must be unemployed, *have sufficient wage credits in his base period*, be able, available, and actively seeking work, and meet certain registration and reporting requirements. Ind. Code Ann. §§ 22-4-14-2, -3, -5(d)-(e). . . .

*Ind. State Univ. v. LaFief*, 888 N.E.2d 184, 186 (Ind. 2008) (emphasis added). A "base period" consists of, generally, "the first four (4) of the last five (5) completed calendar quarters immediately preceding the first day of an individual's benefit period[.]" I.C. § 22-4-2-12. And, as applicable here, a claimant must have wage credits "equal to at least one and five-tenths (1.5) times the wages paid to the individual in the calendar quarter in which the individual's wages were highest," and the claimant

> must have established wage credits in the last two (2) calendar quarters of the . . . base period in a total amount of not less than two thousand five hundred dollars ($2,500) and a total amount in

the four (4) calendar quarters of the individual's base period of not less than four thousand two hundred dollars ($4,200).

I.C. § 22-4-14-5.

[7] Further, as this Court has explained,

> [u]nder [the Act],[] unemployment insurance benefits are funded by a tax contribution imposed upon Indiana employers. *Ashlin Transp. Serv., Inc. v. Ind. Unemployment Ins. Bd.*, 637 N.E.2d 162, 171 (Ind. Ct. App. 1994). Each year, the [DWD] determines the contribution rate applicable to each employer, and the contribution is then credited to an "experience account" established for each employer by the [DWD]. Ind. Code §§ 22-4-11-2(a), 22-4-11-2(e). An employer's experience account is charged when a qualifying employee receives unemployment benefits based upon employment with that employer. *Ashlin*, 637 N.E.2d at 171. The experience account contribution rate for an employer is determined, in part, by the balance in its experience account. *Id.*

*Indianapolis Concrete, Inc. v. Unemployment Ins. Appeals of Ind. Dep't of Workforce Dev.*, 900 N.E.2d 48, 50 (Ind. Ct. App. 2009).

### *Analysis*

[8] Here, M.A. contends that the Board erred when it found that he did not have sufficient wage credits in the applicable base period to support his claim. In particular, M.A. maintains that the Board considered the wrong base period. M.A. acknowledges that the "regular" base period applicable to his September 13, 2019, application for unemployment benefits was April 1, 2018, through March 31, 2019, but that he did not have sufficient wage credits to establish

eligibility. As M.A. correctly points out, Indiana Code Section 22-4-2-12.5 provides for an "alternate" base period to be used because he received workers' compensation benefits during the "regular" base period. While M.A. acknowledges that the "alternate" base period in his case, April 1, 2017, through March 31, 2018, was already used to support his first unemployment benefit claim in July 2018, he asserts that "[n]othing prohibits the DWD from charging an employer's experience account for unemployment benefits awarded based on wage[] credits calculated using the same base period *twice*." Appellant's Br. at 13 (emphasis added).

[9]     However, the State asserts that "Indiana law does not permit more than one charge against an experience account for the same period." Appellee's Br. at 12. In support, the State cites Indiana Code Section 22-4-11-1, which provides in relevant part that,

> [f]or the purpose of charging employers' experience . . . accounts with regular benefits . . . to any eligible individual . . . , such benefits paid shall be charged proportionately against the experience . . . accounts of the individual's employers in the individual's base period . . . *against whose accounts the maximum charges specified in this section shall not have been previously made*.

(Emphasis added.) In other words, the State asserts, a claimant's base period may only be used to support unemployment benefits if that base period has not previously been used. Indeed, as the State points out, because an employer's experience account is "funded by a tax contribution," *Indianapolis Concrete, Inc.*, 900 N.E.2d at 50, using the same base period twice would violate "the general

prohibition against double taxation." *See* Appellee's Br. at 13 (citing *Woodward v. Jacobs*, 27 Ind. App. 188, 60 N.E. 1015, 1017 (1901)).

[10] Again, "[a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself." *LTV Steel Co.*, 730 N.E.2d at 1257. In his brief on appeal, M.A. makes no argument that the State's interpretation of Indiana Code Section 22-4-11-1 is "inconsistent with the statute itself." And, other than his bare assertion that nothing prohibits the use of the same base period twice, he does not otherwise challenge the State's interpretation of the statute. *See id.* Thus, M.A. has not satisfied his burden on appeal to show that the trial court erred when it affirmed the Board's decision denying M.A.'s unemployment benefits.

[11] In sum, because M.A. received workers' compensation benefits during the "regular" base period applicable to his September 2019 application for benefits, the "alternate" base period under Indiana Code Section 22-4-2-12.5 applied. However, the "alternate" base period had already been used to support a prior application for benefits, and, under the facts presented here, the same base period cannot be used twice.[1] Accordingly, we hold that the Board did not err when it affirmed the ALJ's decision denying M.A. unemployment benefits.

---

[1] M.A. makes no contention that the "maximum charges" had not previously been made on the employer's experience account for the applicable base period. *See* I.C. § 22-4-11-1.

Affirmed.

Bradford, C.J., and Mathias, J., concur.